UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CANDACE GERTCHER,

    Plaintiff,

v.

JASON THERRIAN,

    Defendant.
_____/

Case No. 2:20-cv-240

Hon. Hala Y. Jarbou

## ORDER

Before the Court are motions in limine filed by Defendant Therrian (ECF No. 94) and Plaintiff Gertcher (ECF No. 96). For the reasons herein, the Court will grant Defendant's motion and partially grant Plaintiff's motion.

### A. Defendant's Motion

Defendant moves the Court to exclude "reference or question regarding [an] alleged extramarital affair" involving Defendant. (Def.'s Mot. 9, ECF No. 94.) Defendant argues that this issue is irrelevant and that the danger of unfair prejudice outweighs whatever probative value it may have.

#### 1. Background

During Defendant's deposition, Plaintiff's counsel asked him questions about an alleged extramarital affair that he had with a female police officer from a different department. Michigan State Police ("MSP") records indicate that the female police officer's husband filed a complaint with the MSP's Professional Standards Section, alleging that Defendant had an affair with the officer. (Original Incident Rep. 1, ECF No. 94-3.) During the MSP's investigation of this complaint, MSP Trooper Peter Dekryger purportedly told investigators that he saw Defendant and the police officer "kissing and embracing in the break room." (Suppl. Incident Rep. 1, ECF No. 99-

2.) Dekryger confirmed these facts during his deposition in this matter. (Dekryger Dep. 50, ECF No. 99-4.) And according to Dekryger, when Dekryger asked Defendant what the "Gertcher v. Therrian deposition was about," Defendant said, "probably about my affair." (*Id.* at 43.)

At Defendant's deposition, he acknowledged that his co-workers had alleged that he had an affair with a police officer, but he denied that such an affair occurred. (Therrian Dep. 7, ECF No. 99-3.)

During the discovery process in this case, Defendant asked the Court to preclude Plaintiff's counsel from asking further questions of witnesses regarding the alleged affair. When granting that request, Magistrate Judge Vermaat summarized the legal issues as follows:

> The Court recognizes that presentation of evidence showing a witness's possible biases, prejudices, or ulterior motives is admissible. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). In addition, as noted on the record, evidence regarding an extramarital affair may be relevant as to Therrian's character for truthfulness. During trial, Gertcher may be able to attempt to impeach Therrian during cross examination with questions relating to his infidelity if the trial court concludes that this line of inquiry would reflect on his character for untruthfulness. Fed. R. Evid. 608(b). But, because the question of Therrian's infidelity appears entirely collateral to the issues in the case, Gertcher would be "stuck with" the answer and would not be allowed to present extrinsic evidence on this point. *See United States v. Frost*, 914 F.2d 756, 767 (6th Cir. 1990) (noting that "[t]he district court correctly pointed out that Rule 608(b) prohibits such extrinsic evidence regarding credibility and that defense counsel are 'stuck with' the response given on cross-examination"). Thus, Gertcher could not call other witnesses to testify that Therrian did, in fact, engage in extramarital affairs. The one exception to this rule would arise if Therrian called witnesses to testify as to his reputation for truthfulness or their opinion as to his truthfulness, pursuant to Fed. R. Evid. 608(a). In that case, pursuant to Rule 608(b), Gertcher could conceivably cross examine these witnesses on specific instances of Therrian's conduct.
>
> Based on the information presented to the Court, Gertcher already has the information she needs to purs[u]e these lines of impeachment in trial. In addition, this line of questioning appears to have great potential to cause annoyance and embarrassment, which are considerations under Fed. R. Civ. P. 26(c)(1), and not proportional to the needs of the case, as required under Fed. R. Civ. P. 26(b)(1).
>
> Accordingly, . . . the Court will grant Therrian's request for a protective order that precludes furthering questioning of deponents with regard to Therrian's extramarital affairs and/or attempted extramarital affairs. . . .

(7/23/2021 Order 4-5, ECF No. 50.)

### 2. Applicable Rules

Rule 402 of the Federal Rules of Evidence provides that "relevant" evidence is generally admissible whereas "irrelevant" evidence is not. Fed. R. Evid. 402. Rule 608 provides that a witness's credibility "may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Fed. R. Evid. 608(a). Extrinsic evidence is not admissible "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). "But the Court *may*, on cross examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.]" *Id.* (emphasis added). Finally, Rule 403 permits the Court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### 3. Analysis

Here, Defendant argues that the existence of the alleged extramarital affair is not relevant to the issues in this case, which concerns an arrest performed by Defendant at Plaintiff's home. The Court agrees that an alleged affair between Defendant and an individual who was not involved with the arrest and who is not a witness in this case has no connection to the facts of this case. Evidence of such an affair does not make any of the facts underlying Plaintiff's claims "more or less probable." *See* Fed. R. Evid. 401(a).

Also, Defendant persuasively argues that the alleged affair is not probative of his character for truthfulness or untruthfulness under Rule 608. *See United States v. Thiongo*, 344 F.3d 55, 60 (1st Cir. 2003) ("Evidence Defendant bore the man's child while married to another does not

3

appear to be relevant or probative of Defendant's truthfulness or untruthfulness."); *United States v. Ndiaye*, 434 F.3d 1270, 1290 (11th Cir. 2006) (holding that a letter proposing an extramarital "get-together" "does perhaps suggest that Aimasiko was not being entirely candid with his wife, [but] it does not directly relate to the Appellant's truthfulness and honesty"; consequently, "there was a significant danger of unfair prejudice to the Appellant in allowing" questions about the matter).

Plaintiff responds that the alleged affair is relevant under Rule 608 because it was not a "normal" extramarital affair; it involved "a fellow law enforcement officer, while on duty, while on MSP premises, [and] an IA investigation into the affair was ongoing at the time of the subject incident[.]" (Pl.'s Resp. to Def.'s Mot. 12, ECF No. 99.) But none of those facts or circumstances makes such an affair more probative of Defendant's character for truthfulness or untruthfulness.

Plaintiff also contends that the alleged affair is relevant because Defendant "lied about the existence of the affair in his discovery deposition." (*Id.*) Although Dekryger's testimony arguably contradicts Defendant's denial of the existence of the alleged affair, Plaintiff does not explain how that evidence falls within the ambit of Rule 608. Indeed, both Dekryger's testimony (and any other evidence of the alleged affair) and Defendant's denial of the affair appear to be extrinsic evidence of misconduct by Defendant, which is not admissible under Rule 608(b).

At any rate, the danger of unfair prejudice outweighs whatever probative value the existence of the alleged affair, and Defendant's denial of it, may have. An inquiry into this matter at trial would require the jury to consider events that are completely unrelated to the core facts at issue, leading to potential distraction, confusion of the issues, and a waste of time. Among other things, the jury would have to determine what occurred between Defendant and the police officer, whether that conduct constituted an "affair," and whether Defendant's denial of the same

4

undermines his credibility. Those issues are far removed from Plaintiff's claims in this case. Moreover, evidence of such an affair presents a risk that the jury's decision will be improperly influenced by their view of conduct that is not at issue. Thus, a Rule 403 assessment weighs against admission of this evidence. *See also* Fed. R. Evid. 611(a)(3) (allowing a court to "protect witnesses from harassment or undue embarrassment").

Plaintiff also contends that the alleged affair is relevant as evidence of a violation of MSP policy; it suggests that Defendant "was willing to violate MSP policy in the form of his interactions with [Plaintiff]." (Pl.'s Resp. to Def.'s Mot. 17.) MSP policy prohibits conduct "which brings the department into disrepute or reflects discredit on the individual as a member of the department or that which impairs the efficiency of the department." (MSP Code of Conduct, ECF No. 99-5, PageID.2026.) It also prohibits "[o]bscene or immoral conduct on duty[.]" (*Id.*) But Plaintiff's rationale conflicts with Rule 404(b), which generally prohibits evidence of other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

Plaintiff relies upon *Slappy v. City of Detroit*, No. 19-10171, 2021 WL 2986284 (E.D. Mich. July 15, 2021), which noted that "case law does not categorically exclude evidence of the violation of administrative rule or policy. Although violation of a rule or policy does not determine constitutional law, it may be relevant to whether a defendant acted within constitutional bounds." *Id.* at *8 (citations omitted). That case is inapposite. There, the court was referring to evidence that the *challenged actions* by the defendants violated policy. It was not referring to evidence that the defendants had violated policy on a prior occasion, offered to show that the defendants were likely to have violated policy during the incident at issue in the case. The latter runs headlong into Rule 404(b). Accordingly, the Court is not persuaded that it should allow evidence of, or reference

5

to, the alleged affair. The Court will grant Defendant's motion and exclude references or questions regarding an alleged extramarital affair involving Defendant, unless Defendant opens the door to such evidence or questioning.

**B. Plaintiff's Motion**

Plaintiff moves the Court to exclude the following: (1) an "Internal Affairs Original Incident Report," authored by MSP Lieutenant Jennifer Pintar; (2) an "MSP Internal Affairs Final Disposition Report"; (3) "any reference whatsoever to Lt. Pintar's purported internal investigation, and her resulting report by any witness"; (4) the testimony of Lt. Pintar; (5) "any reference whatsoever to the [Final Disposition Report] by any witnesses"; (6) the testimony of Captain Clint Michelin; and (7) the testimony of Lieutenant Brody Boucher. (Pl.'s Mot. 2, ECF No. 96.)

Plaintiff contends that Lt. Pintar investigated Defendant's actions toward Plaintiff after Plaintiff filed this case. Pintar then authored a report that consists primarily of an "accumulation of police reports pertaining to the subject incident." (*Id.*) She also interviewed Defendant and Deputy Kurtti, the other officer who was present during Plaintiff's arrest. After reviewing Pintar's investigation, Captain Clint Michelin and/or Lieutenant Brody Boucher purportedly determined that Plaintiff's complaint in this action is "unfounded." (*Id.* at 4.) Plaintiff "anticipates" that Defendant will use the investigation report and its disposition as evidence that MSP investigated the incident and determined that Defendant was "exonerated." (*Id.* at 5.) Plaintiff argues that Pintar's report is inadmissible hearsay (and hearsay within hearsay, to the extent it summarizes the statements of others). And Plaintiff notes that Defendant did not disclose Pintar, Michelin, or Boucher as potential witnesses in his expert disclosures.

Defendant responds that he produced the incident report and disposition report during discovery, before his own deposition and before the deposition of Officer Kurtti. Also, Defendant's counsel stipulated by email to Plaintiff's counsel that he would not introduce the

6

original incident report or the final disposition report at trial.  (Def.'s Resp. to Pl.'s Mot. 3, ECF No. 98.)  And Defendant agreed not to call Pintar as a witness.  (*Id.*)  Thus, Defendant does not object to their exclusion.  But Defendant contends that he and Kurtti have personal knowledge of the investigation and its outcome.  He asks the Court to "allow trial witnesses to be questioned regarding their personal involvement with the internal affairs investigation and the outcome of it." (*Id.* at 7.)

Because Defendant does not object to the exclusion of the reports and the testimony of Pintar, Michelin and Boucher, the Court will grant Plaintiff's motion to the extent it asks for their exclusion.  On the other hand, at this time, the Court is not persuaded that testimony by Defendant and Kurtti about their personal knowledge of the investigation and its outcome should be excluded.  Such testimony would not be hearsay.  Likewise, the Court is not persuaded that it should exclude all references to the investigation or its outcome.

### C. Conclusion

For the reasons stated,

**IT IS ORDERED** that Defendant's motion to exclude evidence and references to an alleged extramarital affair involving Defendant (ECF No. 94) is **GRANTED**.  Plaintiff may not introduce evidence of such an affair or refer to it in questioning or argument unless Defendant opens the door to such evidence or questioning.

**IT IS FURTHER ORDERED** that Plaintiff's motion to exclude evidence regarding the internal affairs investigation of the incident (ECF No. 96) is **GRANTED IN PART**.  Defendant may not introduce the following into evidence: (1) the MSP Internal Affairs Original Incident Report; (2) the MSP Internal Affairs Final Disposition Report; or (3) the testimony of Lieutenant Jennifer Pintar, Captain Clint Michelin, or Lieutenant Brody Boucher.  But at this time, the Court

will not exclude references to the investigation and its outcome, or the testimony of other witnesses regarding their personal knowledge of the same.

The Court issues this Order with the caveat that its evidentiary rulings are based on the parties' present motions and the Court's assessment of them at this stage. These rulings are subject to change based on the proofs presented at trial or any other relevant developments in those proceedings.

Dated:  July 14, 2022                                        /s/ Hala Y. Jarbou
                                                                                             HALA Y. JARBOU
                                                                                             UNITED STATES DISTRICT JUDGE